UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **LEROY WILLIAMS** | * | **CIVIL ACTION NO.  12-3102** |
| **VERSUS** | * | **JUDGE JAMES T. TRIMBLE, JR.** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

Background & Procedural History

Leroy Williams protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on November 2, 2010. (Tr. 114-115, 118-122, 138). He alleged disability as of November 13, 2009, because of anemia, pancreatitis, alcohol abuse, metastatic cancer, and stomach pain. (Tr. 131). The claims were denied at the initial stage of the administrative process. (Tr. 62, 73, 84-87). Thereafter, Williams requested and received a July 12, 2011, hearing before an Administrative Law Judge ("ALJ"). (Tr. 28-61). However, in an August 12, 2011, written decision, the ALJ determined that Williams was not disabled under the Act, finding at step four of the sequential evaluation process that he was able to return to his past relevant work as a fast food worker, a sawyer, and a

maintenance man. (Tr. 14-24).[1]  Williams appealed the adverse decision to the Appeals Council. On September 12, 2012, however, the Appeals Council denied Williams' request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 6-8).

On December 14, 2012, Williams filed the instant pro se complaint for judicial review of the Commissioner's final decision.[2]  Following delays for submission of the administrative transcript and supporting memoranda, the matter is now before the court.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the

---

[1]  The ALJ issued an alternative step five finding that Williams was able to make an adjustment to other work that exists in substantial numbers in the national economy.  *Id*.

[2]  The Appeals Council extended Williams' time to file suit until 45 days after receipt of its October 25, 2012, letter.  (Tr. 4-5).

Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be

3

>       made.
>
> (5)   If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### ALJ's Findings

**I.    Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that Williams engaged in substantial gainful activity from August 2009 until September 2010. (Tr. 16). At step two, he found that Williams suffers from severe impairments of gastrointestinal disorder and affective disorder. *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 17-18).

**II.   Residual Functional Capacity**

The ALJ next determined that Williams retained the residual functional capacity to perform medium work, reduced by the ability to only perform jobs that do not require detailed or

complex instructions. (Tr. 18).[3]

## III.   Step Four

At step four, the ALJ utilized a vocational expert to find that Williams was able to return to his past relevant work as a fast food worker, a sawyer, and a maintenance man. (Tr. 22-23).[4]

## Discussion

---

[3]  Medium work is defined and explained by Social Security Ruling 83-10:
> [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds.  As in light work, sitting may occur intermittently during the remaining time.  Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist).  Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward).  However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs).  In most medium jobs, being on one's feet for most of the workday is critical.  Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10.

[4]  Past relevant work is defined as "the actual demands of past work or 'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61)

5

I.     **Plaintiff's Brief Fails to Raise Specific Errors**

Pursuant to the court's scheduling order, plaintiff was required to submit a brief that *inter alia*, set forth "**specific errors** committed at the administrative level which entitle plaintiff to relief." (June 24, 2013, Scheduling Order [doc. # 8]) (emphasis in original).  The order cautioned that "[t]he court will consider only those errors **specifically identified** in the briefs.  A general allegation that the ALJ's findings are unsupported by substantial evidence, standing alone, is insufficient to invoke the appellate function of the federal court." *Id*. (emphasis in original).

Despite these seemingly clear instructions, Williams' single page letter-brief generally alleges that health issues foreclose his ability to work.  He adds that he has difficulty with his breathing; swelling in his extremities, face, and stomach; and with his legs giving out.  Williams' bare recitation of his current impairments does not suffice to challenge to the validity of the Commissioner's decision

After he filed his letter-brief, Williams endeavored to supplement the administrative record on appeal with two pages of medical records that document an August 12, 2013, hospital visit.  *See* M/Leave to Supplement [doc. # 11].  The court denied leave to supplement because review of the proposed evidence confirmed that it did not address Williams' impairments during the relevant period, which extends only through the date of the ALJ's decision, i.e., August 12, 2011.  *See* Aug. 29, 2013, Order [doc. # 12].  The undersigned emphasizes that this court's review of the Commissioner's final decision is limited to the evidence that was before the Commissioner.  *See Higginbotham v. Barnhart*, 405 F.3d 332 (5th Cir. 2005).  Thus, at best, the court could remand the matter to the Commissioner for consideration of plaintiff's recently adduced evidence.  However, the court may order additional evidence to be taken before the Commissioner "only upon a showing that there is new evidence which is material and there is

good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989) (citing, 42 U.S.C. § 405(g)).  To justify remand, the evidence must be "new," and not merely cumulative of what is already in the record.  *Id.* (citation omitted).  The evidence must also be "material"; *i.e.*, relevant, probative, and likely to have changed the outcome of the Commissioner's determination.  *Id.*  Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record.  *Id.*

The court reiterates that the new evidence does not relate to the relevant period.  Thus, if anything, plaintiff's proffered evidence is indicative of no more than a "later-acquired disability or . . . the subsequent deterioration of the previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463, 1471-1472 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985) (internal quotation marks omitted)).  Plaintiff also has not suggested any explanation for his failure to incorporate the "new" evidence into the medical record.  *Pierre, supra*.  "T]he mere fact that a medical report is of recent origin is not enough to meet the good cause requirement."  *Pierre*, 884 F.2d at 803 (citation omitted).

In sum, plaintiff neither has established that the post-decision evidence is material, nor demonstrated good cause for failing to incorporate the evidence into the administrative record.  *Pierre, supra*.  Thus, plaintiff's new evidence does not warrant remand.  Plaintiff's evidence, however, may support a new claim/application for disability.  *See Johnson*, 767 F.2d at 183.

**II.    The ALJ's Decision is Supported by Substantial Evidence and is not Tainted by Legal Error**

Although Plaintiff failed to raise any *specific* errors with the ALJ's decision in his brief, he *did* allege generally in his complaint that the ALJ's physical residual functional capacity findings are not supported by substantial evidence, and that the ALJ erred in his credibility

determination.  *See* Compl.

The court observes, however, that the ALJ assigned significant weight to the findings of the consultative physician, David Hebert, M.D., who was the sole examining physician to have rendered an opinion regarding the effects of Williams' impairments.  At the time of the January 23, 2011, consultative examination with Dr. Hebert, Williams complained of metastatic cancer, pancreatitis, anemia, alcohol abuse, plus stomach and right arm pain.  (Tr. 291-294).  Williams admitted to Hebert that his pancreatitis was caused by his alcoholism.  *Id*.  He stated, however, that he has not had any alcohol since April 2010.  *Id*.  Williams had no history of hypertension, heart disease, diabetes mellitus, lung disease, or renal disease.  *Id*.  He suffered a cut to his right arm that seemed to have resolved.  *Id*.  Dr. Hebert noted that a diagnosis of metastatic carcinoma has never been definitely established.  *Id*.

Williams complained to Hebert that he experienced frequent nausea, vomiting, and epigastric, abdominal, and right arm pain.  *Id*.  Nonetheless, Williams ambulated without difficulty.  *Id*.  In his report, Dr. Hebert questioned whether Williams really had stopped using alcohol, despite the lack of odor on his breath.  *Id*.  Although Williams' abdomen was tender upon palpation, all peripheral joints had a normal appearance and completely normal range of motion.  *Id*.  Motor strength was 5/5 in all areas and handgrip was 5/5 bilaterally.  *Id*.  His sensory system was intact with no neurological deficits.  *Id*.

Hebert diagnosed well-healed scar on the right arm; history of severe alcoholism which had resulted in chronic pancreatitis and chronic inflammatory changes in the liver; no proven metastatic carcinoma; and history of very significant alcohol abuse in the past.  *Id*.  Hebert opined that there was no reason why Williams could not do routine walking, sitting, standing, carrying, and lifting for an eight hour workday.  *Id*.  Mentally, he was alert, and quite functional. *Id*.  Hebert generally attributed his findings to Williams' chronic alcoholism, pancreatitis, and

fatty liver change. *Id.*

On January 26, 2011, non-examining agency physician Hollis Rogers, M.D. reviewed the record, including Dr. Hebert's report, and opined that Williams' physical impairments were non-severe, i.e. "a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." (Tr. 295); *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000). Although the ALJ ultimately determined that Williams' physical impairments *were* severe, Dr. Rogers' opinion nevertheless supports the ALJ's ultimate determination that the impairments were not debilitating. Moreover, even if Williams' physical impairments *had* reduced his work capacity to the light or sedentary level, the vocational expert opined that there were jobs that exist in substantial numbers in the national economy that someone with Williams' vocational background could perform. (Tr. 22-24, 54-57).

The court further observes that the ALJ's residual functional capacity assessment of Williams' mental impairment(s) is substantially supported by the findings of the consultative psychologist and the non-examining agency psychologist. In particular, on March 9, 2011, Williams underwent a psychological evaluation administered by David Williams, Ph.D. (Tr. 299-306). Williams reported that he was unable to work because of pain and insufficient energy. *Id*. He said that the doctors had found an un-removed corn in his arm, and that he has been sick ever since. *Id*. Every time he attempts to eat, he throws up. *Id*. He reported that his pain was a 6/10. *Id*. He stated that he had symptoms of depression since 2009 because of an inability to work. *Id*. However, he was able to perform normal household chores, and perform normal adaptive living skills. *Id*. Dr. Williams surmised that Williams' description of an un-removed corn may be part of some sort of somatic delusion. *Id*. Williams was oriented to person, place, time, and situation. *Id*. His immediate memory was intact, and vocabulary fair. *Id*. Overall, his

concentration was marginal; pace and persistence were adequate. *Id*. He admitted to only drinking a couple of beers. *Id*. He denied *ever* being a heavy drinker or drug user. *Id*. Dr. Williams noted that he clearly was minimizing the extent of his previous substance abuse. *Id*. Williams diagnosed depressive disorder, NOS; and assigned a Global Assessment of Functioning ("GAF") score of 53.[5] *Id*.

On March 21, 2011, non-examining agency psychologist, Jack Spurrier, Ed.D., reviewed the record, including Dr. Williams' report, and opined that Williams' mental impairment(s) moderately limited his ability to carry out detailed instructions and to maintain attention and concentration for extended periods. (Tr. 70). Although the ALJ incorporated into his residual functional capacity assessment the limitation regarding Williams' inability to perform jobs that require detailed instructions, he did not adopt the moderate limitation on Williams' ability to maintain attention and concentration for extended periods. Any error was harmless, however, because the vocational expert opined that even if a hypothetical claimant with Williams' vocational background were unable to sustain concentration for more than two hours at a time without a break, this additional limitation would not impair his ability to perform the jobs identified by the expert. (Tr. 56).[6]

---

[5] "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" *Boyd*, 239 F.3d at 701 n2 (citing AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV)).

A GAF of 51-60 is defined as "**[m]oderate symptoms** (e.g. flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, no friends, unable to keep a job). *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, DSM-IV, pg. 32.

[6] "Procedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988); *see also Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it

Insofar as plaintiff generally questions the sufficiency of the ALJ's credibility determination, the court notes that the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. SSR 96-7p.  The ALJ also must consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence.  20 C.F.R. § 404.1529(c)(4).  However, the ALJ need not follow formalistic rules in his credibility assessment.  *Falco v. Shalala*,  27 F.3d 160, 164 (5th Cir. 1994).

In this case, the ALJ determined that he could not accept plaintiff's allegations of debilitating symptoms to the extent that they were inconsistent with the ALJ's residual functional capacity assessment.  (Tr. 21-22).  The ALJ listed several reasons for discounting plaintiff's testimony, and ultimately credited the findings of the consultative and agency physicians in lieu of plaintiff's self-described complaints.  *Id*.  The ALJ's analysis satisfied the requirements of 20 C.F.R. § 404.1529, and his resolution is supported by substantial evidence.  *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing);  *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

## Conclusion

For the foregoing reasons, the undersigned finds that the Commissioner's decision that

---

affected claimant's substantial rights).  Any error here does not rise to the foregoing level.

11

plaintiff was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error.  Under these circumstances, the Commissioner's determination cannot be disturbed on appeal.  *Pate v. Heckler*, 777 F.2d 1023, 1026 (5th Cir. 1985) (citations omitted).  Accordingly,

IT IS RECOMMENDED that the Commissioner's decision to deny disability benefits be AFFIRMED, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 13th day of March 2014.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE